IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRED WILLIAMS,<br><br>                Plaintiff,<br>v.<br><br>ALLSTATE VEHICLE &<br>PROPERTY INSURANCE CO.,<br><br>                Defendant. | CIVIL ACTION<br>NO. 18-0675 |

## OPINION

**Slomsky, J.**                                                                                               **August 27, 2018**

**INTRODUCTION**

       Plaintiff Fred Williams brings this action against Defendant Allstate Vehicle and Property Insurance Company, his property insurer, alleging breach of contract in Count I and bad faith in Count II of the Complaint. (Doc. No. 1, Ex. A.) Defendant has moved to dismiss both claims. (Doc. No. 5.)

       Before the Court is Defendant's Motion to Dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Doc. No. 5.) Plaintiff has filed a Response in Opposition (Doc. No. 6), Defendant has filed a Reply (Doc. No. 7) and Plaintiff has filed a Sur-Reply (Doc. No. 9, Ex. A). The parties also have filed supplemental briefs following a hearing before the Court on the Motion to Dismiss. (Doc. Nos. 15, 16.) For reasons that follow, Defendant's Motion to Dismiss (Doc. No. 5) will be granted.[1]

---

[1] In reaching a decision, the Court has considered the Complaint (Doc. No. 1, Ex. A), the Motion to Dismiss (Doc. No. 5), Plaintiff's Response in Opposition (Doc. No. 6), Defendant's Reply (Doc. No. 7), Plaintiff's Sur-Reply (Doc. No. 9, Ex. A), Plaintiff's Supplemental Response in Opposition to the Motion to Dismiss (Doc. Nos. 15), Defendant's

## BACKGROUND[2]

Plaintiff Fred Williams owns a property located at 656 N. 42nd Street, Philadelphia, PA 19104. (Doc. No. 1, Ex. A at 6.) The property was insured under a policy of insurance issued by Defendant Allstate Vehicle and Property Insurance Company (the "Policy").[3] (Doc. No. 1, Ex. A at 6.) At all times relevant, the Policy insured the property and consisted of:

- Pennsylvania House & Home Policy form AVP58;
- Windstorm and Hail Deductible Endorsement form AVP82;
- Roof Surfaces Endorsement form AVP247;
- Sinkhole Activity Coverage Endorsement form AVP315; and
- Pennsylvania Amendatory Endorsement form AVP354.

(Doc. No. 5, Ex. C.)

The Policy has conditions for coverage, which include the following:

**SECTION I—CONDITIONS**

\* \* \* \*

**12. Action Against Us**

No one may bring an action against us in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under a coverage to which Section I Conditions applies, unless:

a) there has been full compliance with all policy terms; and

---

letter in further support of its Motion to Dismiss (Doc. No. 16) and the arguments of counsel at the April 19, 2018 hearing on the Motion to Dismiss (Doc. No. 17).

[2] The following facts are taken from the Complaint and are accepted as true in deciding the Motion to Dismiss. The Court also has considered certain documents that are attached to the Complaint and the property insurance policy, which Defendant attached to its Motion to Dismiss and which is referred to in the Complaint and is central to the claims. See Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (court may consider documents attached to the complaint on Rule 12(b)(6) motion); Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002) ("Documents that the defendant attaches to the motion to dismiss [that] are referred to in the plaintiff's complaint and central to the claim . . . may be considered by the court." (emphasis omitted)).

[3] Defendant attached the Policy to its Motion to Dismiss as Exhibit C.

b) the <u>action is commenced within one year after the inception of loss or damage</u>.

(<u>Id.</u> at 30 (last emphasis added).)

On or about April 12, 2016, Plaintiff's property was damaged after the property "suffered a sudden and accidental direct physical loss." (Doc. No. 1, Ex. A at 7.) Plaintiff submitted a claim to Defendant. (<u>Id.</u>) Defendant investigated the claim and determined that the damage was covered under the Policy. (<u>Id.</u>)

When the parties could not come to an agreement regarding the value of Plaintiff's loss, Plaintiff made a demand on Defendant to go to "appraisal" pursuant to the terms of the Policy. (<u>Id.</u>) The policy contains the following provision related to appraisal:

**SECTION I—CONDITIONS**

\* \* \* \*

**7. Appraisal**

If <u>you</u> and <u>we</u> fail to agree on the amount of loss, either party may make written demand for an appraisal. Upon such demand, each party must select a competent and impartial appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. . . .

\* \* \*

The appraisers shall then determine the amount of loss, stating separately the <u>actual cash value and the amount of loss to each item</u>. If the appraisers submit a written report of an agreement to you and to us, the amount agreed upon <u>shall</u> be the amount of loss.

(Doc. No. 5, Ex. C at 29 (last and penultimate emphases added).)[4]

Pursuant to this provision, an appraisal took place and the appraisers awarded $210,725.76 on a replacement cost basis.[5] (Doc. No. 1, Ex. A at 7.) After deductions for

---

[4] According to the Complaint, "actual cash value" is "[r]eplacement cost less depreciation and the deductible" in the Policy. (Doc. No. 1, Ex. A ¶ 40.)

[5] Plaintiff attached a copy of the appraisal award to its Complaint as Exhibit A.

3

depreciation, the actual cash value of the award was determined to be $158,245.22. (Id.) The award was signed by the appraisers on April 28, 2017 and distributed to Plaintiff and Defendant. (Id.)

Defendant refused to pay the full amount of the award. Specifically, Defendant deducted $25,230.02, which is believed to represent an amount for "demolition and debris removal" that was included in the calculation of the actual cash value by the appraisers. (Id.)

On July 26, 2017, Pierrette Velez, Defendant's employee, sent a letter to Tri-State Public Adjusters, Inc., a public adjustment company retained by Plaintiff, explaining why $25,230.02 was withheld from the payment of the appraisal award.[6] (Id.) Plaintiff understood Ms. Perez's letter to suggest that $25,230.02 was withheld because it represented an amount payable for debris removal. (Id.) Ms. Perez quoted the debris removal section of the Policy, which Plaintiff interpreted to mean that the amount payable for debris removal is not payable under the Policy until such time as the expense is incurred. (Id.) The debris removal section states as follows:

**SECTION I—ADDITIONAL PROTECTION**

\* \* \* \*

**3. Debris Removal**

<u>We</u> will pay reasonable expenses <u>you incur to remove debris of covered property damaged by a loss we cover</u>. If the loss to the covered property and the cost of debris removal are more than the Limit Of Liability shown on the Policy Declarations for the covered property, <u>we</u> will pay up to an additional 5% of that limit for debris removal.

(Doc. No. 5, Ex. C at 25 (second emphasis added).)

On September 8, 2017, Plaintiff filed suit in the Philadelphia County Court of Common Pleas for breach of contract and bad faith because Defendant refused to pay the full amount of

---

[6] Plaintiff attached a copy of the letter to its Complaint as Exhibit B.

the actual cash value as determined by the appraisers. (Doc. No. 1, Ex. A.) Defendant removed the case to this Court on the basis of diversity of citizenship jurisdiction. (Doc. No. 1 at 1.) Defendant filed the instant Motion seeking to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Doc. No. 5.) The Motion is ripe for a decision.

**STANDARD OF REVIEW**

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Iqbal, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their

veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679). The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (alteration in original) (citation omitted). The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

**ANALYSIS**

In its Rule 12(b)(6) Motion to Dismiss, Defendant argues that Count I of the Complaint (breach of contract) should be dismissed in its entirety for failure to comply with the Policy's one-year suit limitation, and Count II of the Complaint (bad faith) should be dismissed in its entirety because Plaintiff has not pled a plausible claim of bad faith. (Doc. No. 5.) Accordingly, the Court will discuss each of Defendant's arguments in turn.

**A.    Count I (Breach of Contract)**

Plaintiff alleges that Defendant breached its contract with Plaintiff by denying full payment of the actual cash value of Plaintiff's claim under the Policy as calculated by the

appraisers. Defendant responds that Plaintiff's breach of contract claim is barred by the one-year suit limitation provision in the Policy, which is enforceable under Pennsylvania law.

Suit limitation clauses in insurance policies are not imposed by statute; rather, they are contractual undertakings between parties to limit the time for bringing suit on the contract. Gen. State Auth. v. Planet Ins., 346 A.2d 265 (Pa. 1975). The suit limitation provision under the Policy here sets a time limit of "one year after the inception of loss or damage" for commencing suit:

> No one may bring an action against us in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under a coverage to which Section I Conditions applies, unless:
>
> a) there has been full compliance with all policy terms; and
>
> b) the action is commenced within one year after the inception of loss or damage.

(Doc. No. 5, Ex. C at 30 (last emphasis added).)

"The law is clear that such a clause, setting time limits upon the commencement of suits to recover on a policy, is valid and will be sustained." Gen. State Auth., 346 A.2d at 266; Commonwealth v. Transamerican Ins., 341 A.2d 74, 76 (Pa. 1975) ("This Commonwealth has long recognized the validity of a policy provision limiting the time of bringing suit under its terms and rendering the normal statute of limitations for the cause of action in question inapplicable."); Schreiber v. Pa. Lumberman's Mut. Ins., 444 A.2d 647, 649 (Pa. 1982); see also Swan Caterers, Inc. v. Nationwide Mut. Fire Ins., No-12-24, 2012 WL 5508371, at *4 (E.D. Pa. Nov. 13, 2012) (upholding one-year suit limitation provision). The limitation period runs from "the date of the occurrence of the destructive event or casualty insured against." Petraglia v. Am. Motorists Ins., 424 A.2d 1360, 1362 (Pa. Super. Ct. 1981) (quoting Gen. State. Auth., 346 A.2d at 267). Failure to bring a claim within the limitation period in the Policy will result in an

"absolute bar" to the claim. Toledo v. State Farm Fire & Cas. Co., 810 F. Supp. 156, 158 (E.D. Pa. 1992) (citing Gen. State Auth., 346 A.2d at 742-43).

The Complaint alleges that on or about April 12, 2016, Plaintiff's property "suffered a sudden and accidental direct physical loss." (Doc. No. 1, Ex. A at 7.) On September 8, 2017, Plaintiff brought suit against Defendant contesting the amount of the coverage under the Policy. (Id.) The commencement of suit provision contained in the Policy explicitly covers such a cause of action "related to the existence or amount of coverage" and mandates that a suit be brought within one year of the inception of loss or damage. Accordingly, Plaintiff should have filed suit by April 12, 2017. September 8, 2017, the date Plaintiff filed suit, is nearly five months after the one-year deadline had passed. Given the valid one-year suit commencement provision contained in the Policy, it is evident that Plaintiff instituted this cause of action beyond the Policy's limitation period. Accordingly, absent proof of waiver or estoppel, Pennsylvania case law would warrant dismissal of the breach of contract claim.

Plaintiff argues that the suit limitations provision is not applicable to the facts of this case and even if it is, Defendant "waived" the suit limitation and Plaintiff was "led . . . to believe" that Defendant would not enforce the limitation. (Doc. No. 1, Ex. A ¶¶ 31, 33.) He alleges, in relevant part, as follows:

> 29. The policy at issue requires the insured to file suit within one year of the date of loss.
>
> 30. The policy's suit limitation provision was tolled during the pendency of the appraisal.
>
> 31. Defendant, by going to appraisal and making payment beyond the suit limitations period, waived the enforcement thereof and/or led Plaintiff to believe that it would not seek to enforce same.
>
> 32. Defendant breached is contractual obligation to Plaintiff more than one year after the date of loss.

8

> 33. The suit limitations provision contained in the policy is not applicable to the facts of this case.

(Id. ¶¶ 29-33.)

Plaintiff argues that the suit limitation should not be enforced because the defense has been waived. Although a commencement of suit provision is legally enforceable, it may be extended or waived "where the actions of the insurer lead the insured to believe the contractual limitation period will not be enforced." Gen. State Auth., 346 A.2d at 267 n.6. "Waiver is the voluntary and intentional abandonment or relinquishment of a known right." Prime Medica Assocs. v. Valley Forge Ins., 970 A.2d 1149, 1156 (Pa. Super. Ct. 2009). Waiver arises either by express declaration or else by conduct so inconsistent with the defense that there is no reasonable ground to infer that the insurer relies on the suit limitation defense. Id. at 1156-57.

Estoppel also has been applied to excuse an untimely lawsuit.[7] E.g., Evans Prods. Co. v. West Am. Ins., 736 F.2d 920, 927 (3d Cir. 1984). "Equitable estoppel is a doctrine that prevents one from doing an act differently than the manner in which another was induced by word or deed to expect." Prime Medica Assocs., 970 A.2d at 1157 (citation omitted). An insurer will be estopped from raising the suit limitation defense if there is clear and convincing evidence that the insurer induced the insured to justifiably rely, to the insured's detriment, on the insurer's words or conduct reflecting a decision not to invoke the defense. Id.

"The determination of whether waiver or estoppel has occurred is a conclusion of law." Reinhart v. Erie Ins., No. 2034 MDA 2014, 2015 WL 6159391, at *7 (Pa. Super. Ct. Apr. 30, 2015). "The insured must establish a factual basis to assert the defense of waiver or estoppel." Id. This means the insured "must present 'reasonable grounds for believing that the time limit

---

[7] The Complaint appears to argue only waiver. In his Response to the Motion to Dismiss, however, Plaintiff appears to argue that Defendant's conduct can amount to both waiver and estoppel. Therefore, the Court will discuss both waiver and estoppel.

9

would be extended' or the insurer would not strictly enforce the suit limitation provision." Id. (citation omitted). Upon review of the facts alleged, Plaintiff has failed to do so.

Here, after Plaintiff's property suffered a loss on April 12, 2016, Plaintiff submitted a claim to Defendant, which then investigated the claim and identified the damage covered under the Policy, but the parties could not agree on the value of the loss. Before the one-year suit limitation period in the Policy expired, Plaintiff made a demand on Defendant to go to "appraisal" pursuant to the terms of the Policy.[8] (Doc. No. 1, Ex. A at 7.) Pursuant to said provision, an appraisal took place and the actual cash value of the award was determined to be $158,245.22. (Id.) The award was signed by the appraisers on April 28, 2017, a little over two weeks after the one-year suit limitation expired. (Id.) After the award was distributed to Plaintiff and Defendant, Defendant refused to pay the full amount of the award, deducting $25,230.02. (Id.) Plaintiff in turn filed suit on September 8, 2017 because of Defendant's refusal to pay the full amount of the award. (Id.) But on this record, Plaintiff fails to prove waiver or estoppel because he has not alleged any facts to show that Defendant is responsible for delay.

While Pennsylvania courts have applied the principles of waiver and estoppel to suit limitation provisions, the use of waiver and estoppel has been limited to instances in which the insurer is responsible for the delay. See Gen. State Auth. v. Planet Ins., 346 A.2d 265 (1975); Lardas v. Underwriters Ins., 231 A.2d 740 (1967); Terpeluk v. Ins. Co. of N. Am., 150 A.2d 558 (1959); see Selden v. Metro. Life Ins., 47 A.2d 687 (1946) (beneficiary's ignorance of existence of policy does not excuse failure to comply with suit limitation clause); see also Reinhart v. Erie Ins., No. 2034 MDA 2014, 2015 WL 6159391, at *7 (Pa. Super. Ct. Apr. 30, 2015) (citing Lardas

---

[8] The Complaint does not specify when Plaintiff made the demand to go to appraisal. But given the statement in the Complaint that "[t]he policy's suit limitation provision was tolled during the pendency of the appraisal," the Court infers that Plaintiff made the demand for an appraisal before the one-year period for suit initiation expired. (Doc. No. 1, Ex. A ¶ 30.)

and Gen. State Auth. for the proposition that under Pennsylvania law, one-year limitations will be enforced unless conduct by the insurer leads the insured to believe the limitation period will not be relied on).[9]

In Lardas v. Underwriters Ins., the Pennsylvania Supreme Court concluded that the insurer had not induced the insured to refrain from bringing suit by denying liability before the suit limitation expired. 231 A.2d at 741. Similarly, in enforcing the suit limitation provision in General State Authority, the Pennsylvania Supreme Court held that the insured's ignorance of the loss did not excuse its failure to bring suit within the limitations period and noted that a suit limitation clause is to be strictly applied except when the insurer is responsible for the delay. 346 A.2d at 268.[10]

---

[9] Plaintiff argues that Diamon v. Penn Mutual Life Ins., 372 A.2d 1218 (Pa. Super. Ct. 1977), is the "seminal case on estoppel and waiver of the suit limitations provision." (Doc. No. 6 at 7.) The Diamon case held that where an insurer fails to investigate an insured's claim with reasonable care and in good faith, the insurer will be estopped from relying on the statute of limitations clause in the insurance contract to dismiss the insured's claim. This decision has been sharply criticized, even as misapplying Pennsylvania law, and distinguished from actions commenced in violation of suit limitations clauses. See Hosp. Support Servs., Ltd. v. Kemper Grp., Inc., 889 F.2d 1311, 1314 (3d Cir. 1989); Petraglia v. Am. Motorists Ins., 424 A.2d 1360, 1364 (Pa. Super. Ct. 1981); Pini v. Allstate Ins., 499 F. Supp. 1003, 1005 n.4 (E.D. Pa. 1980). After Diamon, the Pennsylvania Superior Court decided Petraglia v. American Motorists Ins., in which the court rejected the general application of the principles of Brakeman v. Potomac Ins., 371 A.2d 1360 (Pa. 1977), the case on which the Diamon court relied. Petraglia, 424 A.2d at 1364.

[10] See also Petraglia v. Am. Motorists Ins., 424 A.2d 1360 (Pa. Super. Ct. 1981). In Petraglia, defendant insurance company sent correspondence to plaintiff insured granting an extension to submit a proof of loss, but was silent as to the one-year suit limitation provision in the policy. Id. 1362. Plaintiff argued that the proof of loss extension constituted a waiver of the suit limitation provision. Id. Plaintiff contended that defendant was estopped from raising the proof of loss extension as a defense when suit was commenced beyond one year. Id.

In upholding the one-year suit limitation, the Superior Court determined that there was no record evidence of any contacts by the insurance company that would give the insured "reasonable grounds for believing that the time limit would be extended or that such provision would not be strictly enforced." Id. at 1364 (quoting McKeekin v. Prudential Ins., 36 A.2d 430, 432 (1944)). The Court acknowledged that the extension for performance of

Defendant never made any statement to Plaintiff that it would not rely on the suit limitation provision, nor did it show any intention through its conduct that it would not enforce the provision. See Prime Medica Assocs., 970 A.2d at 1156-57. Participating in an appraisal in response to Plaintiff's demand, as it was contractually obligated to do, and which was commenced before the suit limitation period expired, does not constitute a waiver. See Gen. State Auth., 346 A.2d at 268; Lardas, 231 A.2d at 741; Fritz v. British America Assur. Co., 57 A. 573, 576 (Pa. 1904). Furthermore, there is no evidence that Defendant ever mentioned the possibility of a settlement of the claim, or even asked Plaintiff to refrain from bringing suit, as would be required for an estoppel. See Prime Medica Assocs., 970 A.2d at 1158 (holding estoppel defense invalid because insurer never mentioned possibility of settlement or induced insured to refrain from commencing suit).

Plaintiff cites Fritz v. British America Assur. Co. for the proposition that where the parties have agreed to go to appraisal, the insurance company waives the suit limitation clause until the award is entered or the appraisal has been abandoned. 57 A. 573. This is not what the Fritz decision held. Rather, the court held that because the insurance company required an appraisement, it waived its right to enforce the limitation clause. Id. In allowing the insured to proceed with his claim, the Pennsylvania Supreme Court stated:

> The company, having required an appraisement . . . must be regarded as having waived its right to enforce the limitation clause until the appraisers have made an award or the appraisement has been abandoned, unless the award has been delayed or the appraisement has been abandoned by reason of the conduct of the insured.

---

one contractual obligation by the insurance company cannot reasonably "induce" the policyholder to believe that another contractual provision does not apply. Id.

Id. at 576; see also D'Ambrosio v. Pa. Nat'l Mut. Cas. Ins., 396 A.2d 780 (Pa. Super. Ct. 1978) (citing Fritz for the proposition that "where the insurer causes the application of a claim by the insured to be untimely filed, it cannot raise the defense of untimeliness to the claim"). This holding falls directly in line with the trend in Pennsylvania that use of waiver and estoppel is limited to instances in which the insurer is responsible for the delay. In contrast, here, Plaintiff as the insured made the demand to go to appraisal, and Defendant insurer accommodated Plaintiff's demand in accordance with the requirement in the Policy. If any party is responsible for delay, it is the Plaintiff insured. In sum, upon review of Fritz and the other Pennsylvania Supreme Court decisions on waiver and estoppel, these decisions do not support a finding of waiver or estoppel under the facts of this case.[11]

Plaintiff points to the fact that Defendant paid the appraisal award minus the $25,230.02 after the one-year suit limitation period expired, as evidence of waiver or estoppel. This argument is unavailing. The Pennsylvania Superior Court recently was presented with a similar argument in which the insured alleged that the insurer waived the suit limitation through actions taken after the limitation period. Reinhart v. Erie Ins., No. 2034 MDA 2014, 2015 WL 6159391, at *8 (Pa. Super. Ct. Apr. 30, 2015). The court rejected the argument, emphasizing that "waiver or estoppel [is] only effective during such time as the plaintiff was led by reason of such statements to postpone his action." Id. (alteration in original) (citation omitted). The court

---

[11] See also Swan Caterers, Inc. v. Nationwide Mut. Fire Ins., No. 12-cv-00024, 2012 WL 5508371, at *5 (E.D. Pa. 2012) (rejecting the argument that continued investigation by an insurer constituted a waiver of a policy's suit limitation, stating that "[t]he process of investigation in determining liability by an insurer does not constitute a waiver by the insurer" (quoting Thomas v. Allstate Ins., 974 F.2d 706, 710 (6th Cir. 1992))); Prime Medica Assocs., 970 A.2d at 1158 ("The mere declaration that Insurer was investigating the claim is insufficient to prove Insured was induced to forbear from commencing suit."); World of Tires, Inc. v. Am. Ins., 520 A.2d 1388, 1391 (Pa. Super. Ct. 1987) (holding insurer's offer of settlement did not waive suit limitations clause).

stated: "Clearly, the actions of [insurer] taken <u>after</u> the limitations period had expired could not have caused Plaintiffs to miss the limitations period." Id. The court noted the policy implications of a holding to the contrary, stating that "it would be counterproductive to find that actions take[n] by an insurance company to resolve a matter after the expiration of the limitations period would constitute a waiver of the suit limitations period." Id. Therefore, Defendant's act of making a payment on the appraisal award in this case after the suit limitation period is not evidence of waiver or estoppel.

Plaintiff also argues that the suit limitation period "is not applicable to the facts of this case" because "Defendant breached its contractual obligation to Plaintiff more than one year after the date of loss." (Doc. No. 1, Ex. A ¶¶ 32-33.) This argument too is unavailing. The parties do not dispute that in Pennsylvania, the clear import of the case law is that courts will enforce the one-year suit limitation provision. While the parties have not cited any case law in which the breach occurred after the limitation period expired, and the Court has not located any, this nuance does not appear to affect enforcement of the provision under Pennsylvania law. See, e.g., Gen. State. Auth. v. Planet Ins., 231 A.2d 740 (1967) (holding that insured's ignorance of the loss did not excuse its failure to bring suit within the limitations period). Plaintiff's argument in this regard is largely policy-based, but it has cited no authority that would lead the Court to believe the Supreme Court of Pennsylvania would toll the suit limitation in this scenario. In fact, based on this Court's reading of the Pennsylvania Supreme Court cases that deal with suit limitation provisions, it likely would uphold the provision here given the lack of evidence of waiver or estoppel. Additionally, there is no allegation that Plaintiff ever requested a waiver of the limitation period or an extension of time. See Blitman Constr. Corp. v. Ins. Co. of N. Am.,

14

489 N.E.2d 236, 237 (N.Y. 1985) (insured "can protect itself by . . . obtaining from the carrier a waiver or extension of its provision").

Given the above, the suit limitation in the Policy is valid and there is no reason under Pennsylvania law to find that waiver or estoppel applies or that the provision was inapplicable. Therefore, because Plaintiff filed its breach of contract claim after the limitation period expired, Count I of the Complaint for breach of contract will be dismissed.

### B. Count II (Bad Faith)

The Complaint alleges that Defendant acted in bad faith when Defendant "unilaterally" deducted $25,230.02 for "demolition and debris removal" from the actual cash value of the appraisal award without first seeking a modification or appeal of the award. (Doc. No. 1, Ex. A at 11-14.) Defendant argues that Plaintiff fails to establish a prima facie case of bad faith because Defendant's payment of the appraisal award was not unreasonable. (Doc. No. 5 at 20.)

Pennsylvania has a bad faith statute. 42 Pa. Cons. Stat. § 8371 (2014). The statute provides as follows:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
>> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>>
>> (2) Award punitive damages against the insured.
>>
>> (3) Assess court costs and attorney fees against the insurer.

Id. The Third Circuit has defined bad faith on the part of the insurer as

> any frivolous or unfounded refusal to pay proceeds of a policy [that need not] be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

15

Nw. Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005) (quoting Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1984)).

To succeed on a bad faith claim, a plaintiff must show: "(1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis." Verdetto v. State Farm Fire & Cas. Co., 837 F. Supp. 2d 480, 484 (M.D. Pa. 2011) (quoting Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.3d 230, 233 (3d Cir. 1997)); see also Rancosky v. Wash. Nat'l Ins. Co., 170 A.3d 364, 365 (Pa. 2017) (adopting the two-pronged test above and holding that self-interest or ill will "is not a prerequisite to prevailing in a bad faith claim under Section 8371"). The insured must meet its burden of proving bad faith by clear and convincing evidence. Nw. Mut. Life Ins. Co., 430 F.3d at 137. As noted, mere negligence is not bad faith. Id.

Here, the Complaint fails to establish a prima facie case of bad faith. There is no averment here that Defendant did not have a reasonable basis for its decision to withhold the debris removal funds. Moreover, the Court finds that Defendant's determination was based on a reasonable interpretation of the Policy.

The Policy state, in pertinent part, as follows:

### 3. Debris Removal

We will pay reasonable expenses you incur to remove debris of covered property damaged by a loss we cover. If the loss to the covered property and the cost of debris removal are more than the Limit Of Liability shown on the Policy Declarations for the covered property, we will pay up to an additional 5% of that limit for debris removal.

(Doc. No. 5, Ex. C at 25 (second emphasis added).) The appraisal award, attached to the Complaint, states multiple times that "[t]he Insurance Carrier is to receive credit for the deductible and all prior payments with respect to this loss. This award does not alter the terms and conditions of the insurance policy." (Doc. No. 1, Ex. A at 18 (emphasis added).) The award

estimate specifically identified $25,230.02 as the cost for demolition and debris removal.[12] Further, the award estimate states: "This is a repair estimate only. The insurance policy may contain provisions that will reduce any payment that might be made." (Doc. No. 5, Ex. G at 2.) Given this language, Defendant was permitted to reduce any appraisal award based on the terms and conditions of the Policy, including the debris removal provision.

Consistent with the debris removal provision, Defendant would pay for debris removal when it was incurred. Given that the appraisal specified that it did not alter the terms and conditions of the Policy, and in fact permitted Defendant to reduce an appraisal award based on the terms of the Policy, Defendant's decision to do so with regard to debris removal was reasonable.[13] Further, it deducted $25,230.02 for "demolition and debris removal," which was the precise amount the award identified as the cost for demolition and debris removal. For these reasons, Defendant acted reasonably when it paid the appraisal award. Therefore, the Complaint fails to establish a prima facie case of bad faith.

---

[12] The Complaint states that the $25,230.02 figure is believed to represent an amount for "demolition and debris removal." Defendant attached the appraisal award estimate to its Motion to clarify this fact. (Doc. No. 5, Ex. G.)

[13] Plaintiff argues that under Pennsylvania law, based on the Superior Court decision Gilderman v. State Farm Ins., 649 A.2d 941 (Pa. Super. Ct. 1994), Defendant was required to pay the amount allotted for debris removal as part of the actual cash value payment. (Doc. No. 1, Ex. A at 11.) The issue in Gilderman was "whether an insurer, which has agreed to pay repair or replacement costs less depreciation in advance of actual repair or replacement of a covered loss, may automatically withhold both depreciation and a flat twenty percent representing contractor overhead and profits from its advance payment." 649 A.2d at 942. The court held that the insurer could not withhold overhead and profit from an actual cash value payment, observing that "[r]epair or replacement costs logically and necessarily include any costs that an insured reasonably would be expected to incur in repairing or replacing the covered loss." Id. at 945. The court did not reach the question whether a "paid when incurred" debris removal provision is enforceable. Therefore, the case does not appear to apply to these facts. Plaintiff contends that "paid when incurred" provisions are contrary to Pennsylvania law after Gilderman. Neither the Court nor either party has located a single case to support Plaintiff's reading of Gilderman. For these reasons, Plaintiff's argument is unconvincing.

**CONCLUSION**

For all the foregoing reasons, Defendants' Motion to Dismiss (Doc. No. 8) will be granted. An appropriate Order follows.